### UNITED STATES v. CHAVEZ.

(District Court, W. D. Texas, El Paso Division. October 5, 1912.)

No. 1,590.

NEUTRALITY LAWS (§ 5*)—VIOLATION—MUNITIONS OF WAR—"EXPORT."

Joint Congressional Resolution No. 89, March 14, 1912 (37 Stat. ——), provides that, whenever the President shall find that in any American country conditions of domestic violence exist which are promoted by arms or munitions of war procured from the United States, and shall make proclamation thereof, it shall be unlawful to "export," except under such limitations as shall be prescribed by the President, any arms or munitions of war from any place in the United States to such country, until otherwise ordered by the President. *Held*, that the word "export" was limited to a transportation of arms or munitions of war from any place in the United States to "such country"; and hence a charge that accused, with intent to export munitions of war from the city of El Paso to a place in Mexico, in violation of a proclamation by the President pursuant to such resolution, did make a shipment of cartridges, etc., by transporting them on his person from one point to another in the city of El Paso, did not charge a violation of the resolution. (Citing 3 Words and Phrases, 2600–2602.)

[Ed. Note.—For other cases, see Neutrality Laws, Cent. Dig. §§ 14–17; Dec. Dig. § 5.*]

Arnulfo Chavez was indicted for violating Joint Resolution March 14, 1912, relating to the exportation of munitions of war from any place in the United States to a country in which conditions of domestic violence existed. On demurrer to indictment. Sustained.

The question to be decided is whether the indictment in this case charges an offense under the law. The charging part of the indictment is as follows:

"That heretofore, to wit, on the 3d day of May, A. D. 1912, in the city and county of El Paso, in the state of Texas, in the Western district of Texas, and within the jurisdiction of this court, one Arnulfo Chavez, alias Arnuto Chavez, late of said district, did unlawfully, knowingly, willfully, and with intent to export the munitions of war hereinafter described from the said city of El Paso to Ciudad Juarez in Mexico, make a certain shipment of certain munitions of war, to wit, two thousand (2,000) Winchester cartridges, of the caliber 30-30; that is to say, did make a shipment of said munitions of war from said city of El Paso, and with said Ciudad Juarez in Mexico as the destination of said shipment, by transporting the same on his person from a point, the exact location of which is to your grand jury unknown, and hence not here given, near the intersection of North El Paso and San Francisco streets, in said city of El Paso, to a point, the exact location of which is to your grand jury unknown, and hence not here given, but which is near the intersection of South Stanton and Fifth streets, in the said city of El Paso."

A motion to quash is interposed by the defendant, based upon the following ground: "Said indictment is insufficient in this: That it fails to charge that the defendant exported munitions of war from the United States."

The charge against the defendant is predicated upon a joint resolution of Congress, approved March 14, 1912, and the proclamation of the President, issued the same day. The proclamation, containing the essential features of the joint resolution, is in the following language:

---

"Whereas, a joint resolution of Congress approved March 14, 1912, reads and provides as follows: 'That whenever the President shall find that in any American country conditions of domestic violence exist which are promoted by the use of arms or munitions of war procured from the United States, and shall make proclamation thereof, it shall be unlawful to export, except under such limitations and exceptions as the President shall prescribe, any arms or munitions of war from any place in the United States to such country until otherwise ordered by the President or by Congress.'

"And whereas, it is provided, by section 2 of the said joint resolution, 'that any shipment of material hereby declared unlawful after such a proclamation shall be punishable by fine not exceeding ten thousand dollars or imprisonment not exceeding two years, or both':

"Now, therefore, I, William Howard Taft, President of the United States of America, acting under and by virtue of the authority conferred in me by the said joint resolution of Congress, do hereby declare and proclaim that I have found that there exist in Mexico such conditions of domestic violence, promoted by the use of arms or munitions of war procured from the United States, as contemplated by the said joint resolution; and I do hereby admonish all citizens of the United States and every person to abstain from every violation of the provisions of the joint resolution above set forth, hereby made applicable to Mexico, and I do hereby warn them that all violations of such provisions will be rigorously prosecuted. And I do hereby enjoin upon all officers of the United States, charged with the execution of the laws thereof, the utmost diligence in preventing violations of the said joint resolution and this my proclamation issued thereunder, and in bringing to trial and punishment any offenders against the same."

Charles A. Boynton, U. S. Atty., and S. Engelking, Asst. U. S. Atty. Robert L. Holliday, of El Paso, Tex., for defendant.

MAXEY, District Judge (after stating the facts as above). Rejecting unnecessary verbiage, the real charge against the defendant is that he made a shipment of certain munitions of war, by transporting on his own person, from one point in the city of El Paso to another point within said city, with intent to export the same to the republic of Mexico. Does the act thus charged offend against the law? By the first section of the joint resolution, fully set forth in the statement of the case, it is provided that, after proclamation has been made, "it shall be unlawful to export * * * any arms or munitions of war from any place in the United States to such country"; the last two words referring, as applied to the allegations of the indictment, to the republic of Mexico. The offense being thus defined, the second section of the resolution proceeds:

"That any shipment of material hereby declared unlawful after such a proclamation shall be punishable by fine not exceeding ten thousand dollars, or imprisonment not exceeding two years, or both."

It is thus seen that by the terms of the first section of the resolution the act denounced as unlawful is the exportation (to export) arms or munitions of war from the United States to the country where domestic violence exists, etc. The language is plain and without obscurity. If a doubt could be entertained as to the meaning of the word "export," such doubt is removed by the very words of the resolution. The exportation must be from any place in the United States to "such country." And this is the generally accepted definition of the word "export." United States v. Forsythe, 25 Fed. Cas. 1152; Kidd v. Flagler (C. C.) 54 Fed. 367; Dooley v. United States, 183 U. S. 154, 22

Sup. Ct. '62, 43 L. Ed. 128; 3 Words and Phrases, 2600-2602; 1 Bouvier's Law Dict. p. 564; Webster's Dictionary. In Kidd v. Flagler, supra, the court used the following language:

"The authorities seem to be unanimous on the point that merchandise is exported from this country when it is landed in a foreign country."

Having ascertained the meaning of the first section of the resolution, it remains to consider the second section. The important words are the following:

"That any shipment of material hereby declared unlawful after such a proclamation shall be punishable," etc.

We have seen that the exportation of arms and munitions of war is the only act declared unlawful by the first section, and it would appear naturally to follow that such act only is made punishable by the second section. If the word "material" referred solely to arms or munitions, without regard to their exportation, then every removal of arms or munitions of war from place to place within the city of El Paso would be embraced within the denunciation of the law. But it is obvious that such a construction of the resolution would be repugnant to common sense, and hence that it was never intended by the Congress. Nor would the addition of the words in that connection, "with intent to export to Mexico," employed by the pleader in the indictment, render an offense an act which is not denounced as a crime, because (1) the word "intent" is not used in the resolution, and therefore does not appear to be an ingredient of the offense; and (2) the transportation or shipment from place to place within El Paso of arms and munitions of war, with intent to export the same to Mexico, would amount to the mere unexecuted purpose—that is, attempt—on the part of the person charged to commit the forbidden act, and would fall short of the overt act essential to complete the offense.

The resolution cannot be construed to include an attempt to export without doing violence to its language, and without disregarding the accepted rules for the construction of statutes. And, in addition, such construction would import into the resolution an offense for which the Congress has failed to provide. The distinction between attempt to commit an offense and its actual commission is so well recognized that citation of authority in its support is altogether unnecessary. In this immediate connection, however, it may be instructive to note what was said by the Supreme Court in the smuggling case of Keck v. United States, 172 U. S. 444, 445, 19 Sup. Ct. 257, 43 L. Ed. 505. In that case Mr. Justice (now Chief Justice) White, as the organ of the court, used this language:

"Whatever may be the difficulty of deducing solely from the text of the statute a comprehensive definition of smuggling or clandestine introduction, two conclusions arise from the plain text of the law: First. That whilst it embraces the act of smuggling or clandestine introduction, it does not include mere attempts to commit the same. Nothing in the statute by the remotest possible implication can be found to cover mere attempts to commit the offense referred to. It was, indeed, argued at bar that, as the concealment of goods at the time of entering the waters of the United States tended to render possible a subsequent smuggling, therefore such acts should be considered and treated as smuggling; but this contention overlooks the plain distinction

between the attempt to commit an offense and its actual commission. If this premise were true, then every unlawful act which had a tendency to lead up to the subsequent commission of an offense would become the offense itself; that is to say, that one would be guilty of an offense without having done the overt act essential to create the offense, because something had been done which, if carried into further execution, might have constituted the crime."

What was said by the learned justice in the Keck Case has peculiar significance when applied to the case at bar. The allegations of the indictment, as understood by the court, charge in effect that the defendant attempted to export munitions of war—nothing more; and as the joint resolution is directed against actual exportation, and not merely the attempt to export, the acts charged against the defendant are not embraced within the prohibition. The word "shipment," employed in connection with the words "material hereby declared unlawful," can only refer, in the judgment of the court, to material shipped, exported, to the country where the disturbance exists, since it is only such material that is declared to be unlawful by the first section of the resolution, defining the offense. Viewing the question from any standpoint, it is difficult to conceive how the acts charged against the defendant can be construed to be within the meaning of the law.

Being of the opinion, therefore, that the indictment fails to charge an offense, it follows that the motion to quash should prevail. It is deemed proper to state that, owing to the aggravated condition of affairs existing on our border, and to the number of cases here pending against parties charged with the violation of the joint resolution, the question discussed is regarded as one of unusual importance, and for this reason the court has given to it careful and anxious consideration. If error has been committed, the appropriate appellate tribunal may apply the proper corrective. Act March 2, 1907, c. 2564, 34 Stat. 1246. If, on the other hand, the ruling be affirmed, then the Congress may, in its discretion, enact such additional legislation as may by that body be deemed wise and proper.

For the reasons stated, the motion should be sustained, and the indictment dismissed; and it is so ordered.